IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRELL LEE HICKS
    *Plaintiff*,

v.

PETER STANFORD, *et al.*,
    *Defendants*.

Civil Action No. ELH-14-928

## MEMORANDUM

In this Memorandum, the Court considers whether the evidence supports a constitutional claim of deliberate indifference to a prisoner's medical needs based on a delay in renewing his prescription medicine. In the light most favorable to the plaintiff, there is not a shred of evidence to support a claim against the health care providers under the Eighth Amendment to the Constitution.

Darrell Lee Hicks, an inmate at the Eastern Correctional Institution ("ECI") in Westover, Maryland, filed suit on March 25, 2014, against defendants Peter Stanford, a Physician's Assistant ("PA"), and Jason Clem, M.D., pursuant to 42 U.S.C. § 1983. ECF 1.[1] Both Stanford and Clem provide health care to ECI Maryland prisoners through their employer, Wexford Health Sources, Inc. Plaintiff alleges that the defendants violated his rights under the Eighth Amendment, based on a delay in providing him with a prescription for certain medicine. *Id.*

From December 6 through the afternoon of December 10, 2013, Hicks was denied access to his prescription for Gabapentin, which is the generic version of Neurontin. Further, plaintiff

---

[1] Hicks was self-represented when suit was filed. ECF 1. On December 18, 2014, the Court appointed Donald C. McMillan, III as pro bono counsel for plaintiff. ECF 29. Mr. McMillan moved to withdraw as counsel on July 21, 2015. ECF 52. I granted that request (ECF 53) and, on August 13, 2015, Casey L. Bryant was appointed as pro bono counsel for Mr. Hicks. ECF 56. The Court extends its thanks to both lawyers.

claims that he sustained a head injury when he suffered an epileptic seizure on December 10, 2013, as a result of defendants' failure to provide him with Gabapentin. *Id.* at 4-5. Hicks seeks "compensatory and punitive damages." *Id.* at 3.

After discovery, defendants filed a motion for summary judgment (ECF 95, "Motion") along with several exhibits. ECF 95-1 through ECF 95-8.[2] Two of the exhibits were filed under seal. *See* ECF 96-1 and ECF 96-2. Plaintiff opposes the Motion and also filed a cross-motion for summary judgment. ECF 97 ("Opposition" or "Cross Motion"). Defendants replied (ECF 98, "Reply") and submitted additional exhibits. *See* ECF 98-1 through ECF 98-4; ECF 99-1 (sealed exhibit).[3]

The motions are well briefed and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I shall grant defendants' Motion and deny plaintiff's Cross-Motion.

## I.      Factual Background

On November 27, 2013, Hicks presented to PA Stanford for a "chronic care visit." ECF 95-1 at 6 (Wexford medical record); ECF 95-2 (Hicks deposition), at 7. Stanford recorded that

---

[2] Earlier in the litigation, defendants sought dismissal of the case pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiff failed to state a claim upon which relief could be granted. ECF 8. I denied that motion by Memorandum and Order of October 7, 2014, concluding that Hicks had met the minimum pleading requirements of Rule 8. ECF 18 (Amended Memorandum); ECF 16 (Order).

[3] ECF 96-1 and ECF 96-2 contain plaintiff's medical records and information as to his medical history. ECF 99-1 is identical to ECF 96-1. Because I make minimal reference to these documents, and because plaintiff disclosed some of his health information in the course of litigation, this Memorandum need not be filed under seal.

the reasons for Hicks's medical visit were, *inter alia*, epilepsy and back pain.  ECF 95-1 at 6.

Dr. Clem was not present.  ECF 95-1 at 7; ECF 95-2 at 8.[4]

As of that medical appointment, Hicks already had a prescription for Gabapentin.  But, the prescription was set to expire on December 6, 2013.  ECF 95-1 at 8.  Furthermore, as of the medical visit, Hicks had also been prescribed Divalproex Sodium Er and Depakote Er, which were scheduled to expire on January 6, 2014.  *Id.*  At the medical visit, Stanford continued Hicks's prescriptions for Gabapentin, Divalproex Er, and Depakote Er through March 27, 2014. *Id.* at 7.[5]

At ECI, Gabapentin is designated as a "non-formulary" medication.  ECF 95-1 at 4-5 (Non-Formulary Drug Request Form).[6]  Moreover, "[a] provider ordering [a non-formulary medication] must not only order the medication through the electronic patient healthcare records system, but the provider must also submit a separate form requesting approval for the medication

---

[4] Under Md. Code (2014 Repl. Vol., 2016 Supp.), § 15-302 of the Health Occupations Article, a physician assistant is permitted to prescribe, dispense, and administer controlled dangerous substances, prescription drugs, and medical devices, provided that an appropriate "delegation agreement" is in place between a "primary supervising physician" and the physician assistant.

[5] Gabapentin and Neurontin are used interchangeably throughout the records.  According to the Food and Drug Administration, Gabapentin is the generic name for Neurontin.  FOOD AND DRUG ADMINISTRATION, MEDICATION GUIDE: NEURONTIN (2015), *available at*: http://go.usa.gov/x8y2G (last visited Dec. 8, 2016).

Under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

[6] The parties do not explain the meaning of a "non-formulary medication" or how or why a particular medication is so designated.  However, that omission is not material to the disposition.

from the medical director."   Defendants' SOMF, ECF 95 at 4 ¶ 4; Plaintiff's Statement of Material Facts, ECF 97 at 2.

Notably, "Non-Formulary drugs may not be stocked in the pharmacy" at ECI.   ECF 95-1 at 5.   As a result, "there may be a delay of up to four days" in obtaining such medication.   *Id.* However, "[i]f it is <u>imperative</u> the medication be started ASAP", the pharmacist may be contacted "directly."   *Id.*   Notably, failure to submit the required paperwork will result in the patient's inability to access the prescribed medications.   ECF 97, ¶ 4.

It is undisputed that, on November 27, 2013, Stanford ordered the Gabapentin prescription through Wexford's computer system.   *See* ECF 95-1 at 7.   However, Stanford failed to submit the additional form needed to process a prescription for a non-formulary drug.   ECF 95, ¶ 6; ECF 97, ¶ 6.   And, Hicks complains that Dr. Clem "never followed up to make sure that the request for Mr. Hicks' prescription had been processed or that the medication was ever actually received by Mr. Hicks."   ECF 97 at 3 ¶ 10.

On December 9, 2013, Kristina Krieger, "a CRNP",[7] submitted a non-formulary request form, ordering Hicks's Gabapentin.   ECF 95-1 at 4-5.   The form lists "Epilepsy" as the diagnosis in support of the prescription.   *See id.* at 4.   Dr. Clem approved the prescription.   *Id.*

At about 1:15 a.m. on December 10, 2013, Hicks suffered a seizure.   *Id.* ¶ 11.   Plaintiff claims that, as a result of the seizure, he received a "severe head injury when he hit his head during the episode."   ECF 97 ¶ 11; ECF 95-2 at 11-12.   According to plaintiff, "[a]t pill call on the morning of December 10, 2013, [he] was again denied his medication."   ECF 97 ¶ 12. However, he received the medications later on that date.   ECF 95 at 5; *see* ECF 95-1 at 2.

---

[7] It appears that CRNP is an abbreviation for a certified registered nurse practitioner.

Stanford testified that he "received an email that notified [him] that a non-form had not been submitted for [the] Neurontin." ECF 95-4 at 4. There is no indication of when Stanford received that email or from whom, although Stanford claims that it was not from Hicks. ECF 95-4 at 4. But, it is clear that the form was submitted on December 9, 2013 (*see* ECF 95-1 at 4), and it is also clear that Hicks received his medication by the afternoon of December 10, 2013. ECF 95 at 7.

In sum, Hicks did not receive Gabapentin "from the morning of December 6, 2013 until the afternoon of December 10, 2013." ECF 95, ¶ 7. Nevertheless, during this time, Hicks had uninterrupted access to his Depakote Er and Divalproex Sodium Er. *Id.*; *see* ECF 95-2 at 10-11.

At his deposition, Stanford indicated that he prescribed Gabapentin to Hicks for "treatment of pain" and that Depakote was prescribed for treatment of seizures. ECF 95-4 at 4-6. Depakote is considered to be a "first-line medication" in the treatment of seizures. ECF 95 ¶ 5 (Defendants' Statement of Material Facts or "Defendants' SOMF"); *see* ECF 95-4 (Stanford Deposition) at 6. However, Hicks testified at his deposition that, at the medical appointment on November 27, 2013, Stanford had said that Gabapentin was prescribed both as a remedy for pain and for epilepsy. ECF 95-2 at 9-10.

The defendants retained P. Jay Foreman, Ph.D., M.D., as an expert. He is Director of the Epilepsy Center, Department of Neurology, at Sinai Hospital in Baltimore. ECF 96-1. Dr. Foreman prepared a Report, dated June 1, 2016, submitted by defendants. *See* ECF 96-1.[8]

---

[8] Dr. Foreman averred in his Report: "*There is no objective evidence that the plaintiff has epilepsy.*" ECF 96-1 (Foreman Report) at 2 (emphasis in original). He points out that the diagnosis appears to be based on a report of a seizure that was related to Hicks's alcohol withdrawal. *Id.* According to Dr. Foreman, "a CT scan of [plaintiff's] brain did not find and [sic] evidence of intracranial injury." *Id.* However, for the purpose of the Motion and the Cross-Motion, I shall assume that plaintiff suffers with epilepsy.

In his Report, Dr. Foreman stated that Gabapentin is primarily used for the "control of chronic pain."   ECF 96-1 at 2.   Although Dr. Foreman acknowledged that Gabapentin is also used to control epilepsy, he maintained that "Gabapentin is widely regarded as a relatively weak, narrow-spectrum" anti-epilepsy drug and its "primary use" is for "control of chronic pain."   *Id.* Notably, Dr. Foreman opined that, at the relevant time, Hicks was "on adequate doses of TWO first-line, broad spectrum, anti-epilepsy drugs (AED)", *i.e.*, Keppra and Depakote.   ECF 96-1 at 2.[9]

According to Dr. Foreman, the recommended dose of Gabapentin for seizure control is "600 mg to 1200 mg to be taken THREE times a day."   *Id.* (emphasis in original).   And, he noted that the dosage prescribed for Hicks was "subtherapeutic for seizure control and appears to be dosed for pain management."   *Id.*   In particular, Wexford's records reflect that Hicks was prescribed two 600 mg doses of Gabapentin per day (ECF 95-1 at 4), a dosage consistent with the claims of Stanford and Foreman that the Gabapentin was prescribed for pain, not for control of seizures.

Plaintiff's expert, Stephanie Johnson, Ph.D., is a licensed clinical neuropsychologist.[10] Her Report is at ECF 96-2.   Dr. Johnson's Report describes Mr. Hicks's medical history.   ECF 96-2 at 3.   But, she does not discuss Hicks's seizure on December 10, 2013, nor does she discuss the significance to him, if any, of the delay in providing Gabapentin.   *See* ECF 96-2.   Nor does Dr. Johnson address the medical uses for Gabapentin.   *See id.*

---

[9] I am unable to locate in the medical record a prescription for Keppra.  But, the record reflects a prescription for two anti-seizure medications, in addition to Gabapentin.  *See* ECF 95-1 at 7.

[10] On December 9, 2016, defendant filed a motion in limine to bar the testimony of Dr. Johnson.  ECF 100.  Hicks has responded (ECF 102), and the time for defendants to reply has not yet elapsed.  *See* Local Rule 105.2.  Because I grant summary judgment in favor of defendants, I shall deny the motion in limine as moot.

Dr. Johnson was also deposed.  *See* ECF 95-6.[11]  At her deposition, Dr. Johnson testified

that "Mr. Hicks . . . has a complicated . . . medical and behavioral history"; and "that review of

his medical records to a reasonable degree of scientific certainty suggest [sic] that some of his

cognitive and behavioral symptoms are most likely than not associated with some of the care he

received while he was at two various correctional institutions," including ECI.  ECF 95-6 at 4;

*see* ECF 96-2 at 13-14.  Dr. Johnson was asked, ECF 95-6 at 9: "Is it your opinion that in this

matter the alteration in Mr. Hick's medications caused him to experience these issues that you

enumerate [including] uncontrollable seizures . . . ?"  She answered, *id.*:  "It is *possible* that these

alterations may have led to some of the symptoms that were just described."  (Emphasis added).

Then, defense counsel asked Johnson whether she held that opinion to "a reasonable degree of

probability or certainty?"  *Id.*  Curiously, in connection with the summary judgment motions,

neither side submitted Dr. Johnson's response.

    Additional facts are included in the Discussion.

## II.    Standard of Review

    Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is

appropriate only "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322–24 (1986).  The non-moving party must demonstrate that there are disputes of material

fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

    The Supreme Court has clarified that not every factual dispute will defeat the motion.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute

---

[11] The Court has no indication as to whether Dr. Foreman was deposed.

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied,* 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322–24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing

affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted), *cert. denied*, 540 U.S. 822 (2003); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). "Both motions must be denied if the court finds that there is a genuine dispute of material fact.[] But if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.[]" 10A C. WRIGHT & A. MILLER, FED. PRACTICE & PROCEDURE, § 2720 (4th ed.).

### III.   Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *See Baker v. McCollan*, 443 U.S. 137

(1979).  Hicks asserts violations of his rights under the Eighth Amendment, arising from his claim of inadequate medical care.  *See* ECF 1.

Defendants contend that summary judgment is appropriate for three reasons.  First, they assert: "Plaintiff cannot establish the subjective component of his deliberate indifference claims against PA Stanford and Dr. Clem."  ECF 95 at 9-11.  Second, defendants contend: "Plaintiff cannot establish his deliberate indifference claim against Dr. Clem based upon supervisory liability."  *Id.* at 11-13.  And third, defendants submit: "Plaintiff fails to support his deliberate indifference claim with expert testimony showing that not receiving Gabapentin caused him to suffer a seizure while taking Depakote."  *Id.* at 13-17.

Hicks counters that defendants are not entitled to summary judgment and, based on the conduct of the defendants, he is the one who is entitled to summary judgment.  *See* ECF 97 at 8-9.  Hicks asserts: "Given that there is no dispute of material fact that Mr. Hicks did not receive the seizure medication he was prescribed in December 2013 prior to his seizure and that he suffered a seizure resulting in head injury and cognitive decline, it is clear that Defendants' deliberate indifference caused Plaintiff's injuries and summary judgment is appropriate here."  *Id.* at 9.

According to plaintiff: "There is absolutely no genuine dispute that Mr. Stanford was aware that Plaintiff would not have immediate access to his medication without the proper forms being submitted. Mr. Stanford blatantly chose to ignore Plaintiff's requests for his prescriptions and admits to not filing the proper form."  *Id.*  at 8.  And, with respect to Dr. Clem, plaintiff argues: "Dr. Clem, likewise, took no steps to ensure that Plaintiff's medication was received in a timely manner, as necessary for Plaintiff's history of seizures, and ignored repeated requests from Plaintiff for access to his medication, even after Plaintiff' struck his head while suffering

from a seizure on December 10, 2013." *Id.* Furthermore, plaintiff contends that Dr. Johnson is "most certainly qualified to offer testimony in regards to Mr. Hicks' cognitive condition." *Id.*

## A.  The Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *King*, 825 F.3d at 219.  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Scinto*, 841 F.3d at 225.  A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.  And, in a case involving a claim of deliberate indifference to a serious medical

need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Proof of an objectively serious medical condition does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. In order "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178.

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Thus, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose

of causing harm or with knowledge that harm will result.'"   *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835).

Of import here, because deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness," it follows that, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).  What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999), resonates here: "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).  Moreover, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious."  *Brice*, 58 F.3d at 105.  In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ."  *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical

needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Even if the requisite subjective knowledge is established, an official may still avoid liability if he "responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844; *see Scinto*, 841 F.3d at 226.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Section 1983 also provides for supervisory liability under certain circumstances.  In *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit set forth three elements that a plaintiff must prove to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See also King*, 825 F.3d at 224 (applying the *Shaw* elements); *Armstrong v. City of Greensboro*, ___ F. Supp. 3d ___, 2016 WL 3167178, at *11 (M.D.N.C. June 6, 2016) (same); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015) (same), *aff'd*, 644 F. App'x 243 (4th Cir. 2016), *cert. denied*, ___ U.S. ___, 2016 WL 5874521 (Dec. 5, 2016).

According to the *Shaw* Court, to satisfy the first element, a plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff."  13 F.3d at 799 (citing

*Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).   And, establishing a "pervasive" and "unreasonable" risk of harm "requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."   *Shaw*, 13 F.3d at 799.   Here, the record is devoid of any evidence indicating a pervasive or "widespread" problem in the timely dispensing of prescription medication.

## B.   Stanford

In the Motion, defendants state: "Plaintiff's sole basis for suing PA Stanford for deliberate indifference is that he did not receive his Gabapentin prescription for four days[.]" ECF 95 at 9 (citing ECF 95-2, Hicks Deposition).   Defendants argue that plaintiff cannot prove the subjective knowledge element of a deliberate indifference claim because, "[c]onsistent with the original prescription, PA Stanford understood Plaintiff's Gabapentin prescription to be for his back pain, not his purported seizure condition."   *Id.* at 10.   Moreover, defendants note that Stanford ordered Hicks's seizure medicine (Depakote), which Hicks received without interruption.   *Id.* at 11; *see, e.g.*, ECF 95-4 at 5-6.

Stanford testified at his deposition that Gabapentin is a "medication used in treatment of pain."   ECF 95-4 at 5.   As noted, Hicks had sufficient medication through December 6, 2013. ECF 95-1 at 8.   Stanford renewed the prescription for Gabapentin at Hicks's medical visit on November 27, 2013, along with several other medications.   ECF 95-4 at 5 ; *see* ECF 95-1 at 7. Indeed, Hicks testified at his deposition that he watched Stanford "push[] the button to send [his] order in, my prescription."   ECF 95-2 at 9.   Stanford testified that he also "put [Hicks] on his

seizure medication", Depakote.  ECF 95-4 at 5; *see* ECF 95-1 at 7.[12]  However, as indicated, Stanford did not immediately complete the additional paperwork needed for a prescription for a non-formulary drug.  As a result, the medicine was not immediately available.  Once the oversight was apparent, the requisite form was completed.  *See* ECF 95-1 at 4.  The resulting delay to plaintiff was from December 6, 2013, to December 10, 2013.  ECF 95 at 5.

Plaintiff maintains that Stanford "blatantly chose to ignore Plaintiff's requests for his prescriptions."  ECF 97 at 8.  Hicks testified at his deposition that, after his medical visit, he "had to keep repeating request forms" to try to get his Gabapentin, ECF 95-2 at 6.  But, Hicks provides no evidence that Stanford knew about those requests.

Although Stanford failed to submit the additional form for a non-formulary drug request, there is no indication that the omission was deliberate.  To the contrary, Stanford attempted to renew the prescription.  Indeed, Hicks was asked at his deposition whether he thought Stanford intentionally withheld his medication, and he responded: "I don't know because I wasn't there.  But yet, I was there when Stanford went, We're going to rush this order."  ECF 95-2.

Stanford prescribed Gabapentin for pain management for Hicks, even if he did not do so properly, and he prescribed other medications for seizures.  Hicks provides neither direct nor circumstantial evidence suggesting that Stanford knew of any risk to plaintiff from the failure to ensure the immediate submission and processing of the request for the non-formulary prescription for Gabapentin.  Even if the Gabapentin was meant to control plaintiff's epilepsy, plaintiff has provided no evidence that Stanford knew of the risk to plaintiff from a brief delay, given that Stanford prescribed other "front line" epilepsy medications.

---

[12] The parties submitted an excerpt of Stanford's deposition.  The excerpt does not include testimony as to Stanford's delay in ordering the Gabapentin.

In his Report, Dr. Foreman stated: "Currently the primary use of Gabapentin is for control of chronic pain." ECF 96-1 at 2. Dr. Foreman also said: "Gabapentin is widely regarded as a relatively weak, narrow-spectrum [anti-epilepsy drug]" and "is considered to be a second or third line medication [for epilepsy] by most experts." *Id.* Notably, Dr. Foreman concluded that, at the time of Hicks's seizure, Hicks was "on adequate doses of TWO first-line, broad spectrum anti-epilepsy drugs (AED), Keppra (indicated for seizures) and Depakote (effective both for seizures and for mood stabilization . . . .)." *Id.* (emphasis in original). And, based on the dose of Gabapentin that Hicks was receiving, Foreman concluded, consistent with Stanford's assertion, that Gabapentin was prescribed for Hicks "for pain management." *Id.* Moreover, plaintiff's own expert, Dr. Johnson, does not dispute the assertions as to the use of Gabapentin generally or as to plaintiff in particular. *See* ECF 95-6; ECF 96-2.

In view of the foregoing, I am satisfied that there is no evidence of deliberate indifference by Stanford. In the light most favorable to plaintiff, he has presented an issue of negligence. That contention does not rise to the level of a constitutional violation. Therefore, Stanford is entitled to summary judgment.

## C. Clem

Summary judgment is also appropriate as to Dr. Clem because there is no evidence that Dr. Clem acted with deliberate indifference, either personally or as Stanford's supervisor.

As noted, to prove an Eighth Amendment violation for denial of adequate medical care, a plaintiff must show, in pertinent part, that the defendant's actions or failure to act amount to deliberate indifferent to a serious medical need. *Scinto*, 841 F.3d at 225-26. Defendants argue that plaintiff has made no such showing as to Dr. Clem. ECF 95 at 11.

As defendants note, Dr. Clem was not present during the chronic care visit on November 27, 2013.  *See* ECF 95-1 at 6-7.  Moreover, when Dr. Clem was presented with the non-formulary drug request, he approved it.  *See* ECF 95-1 at 4-5.  Notably, at Hicks's deposition, he was asked if he had "any reason to believe that Dr. Clem acted intentionally to withhold your gabapentin in December of 2013?"  ECF 95-2 at 11.  He responded, "I don't."  *Id*.  Thus, defendants conclude: "Because Plaintiff cannot show that Dr. Clem acted with subjective recklessness either, the Court should award summary judgment in favor of Dr. Clem as well." ECF 95 at 11.

Furthermore, defendants contend that there is no dispute of material fact that would support a finding of supervisory liability as to Dr. Clem.  As noted, to prove supervisory liability for denial of medical care under the Eighth Amendment, a plaintiff must prove, *inter alia*, that "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff . . . ."  *Shaw*, 13 F.3d at 799.  Thus, plaintiff must provide evidence that the subordinate's conduct was "widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."  *Id.*

Defendants maintain that plaintiff cannot satisfy this element for supervisory liability. Defendants assert: "Plaintiff does not offer any evidence that PA Stanford was engaged in 'widespread' misconduct that posed an 'unreasonable' risk of constitutional harm to prisoners." ECF 95 at 12.  They add:  "Plaintiff cannot show that Dr. Clem had knowledge, whether actual or constructive, that PA Stanford was engaged in conduct that posed any kind of 'pervasive and unreasonable risk of constitutional injury' to prisoners."  *Id*.

-18-

Defendants have met their burden to demonstrate that Dr. Clem lacked actual knowledge about defendant's deprivation of Gabapentin, so as to give rise to an Eighth Amendment violation.  I am also satisfied that defendants have met their burden to demonstrate that Dr. Clem did not have actual or constructive knowledge of widespread constitutional violations committed by his subordinate, so as to give rise to a claim for supervisory liability.  Therefore, the burden shifts to plaintiff to demonstrate a dispute of material fact.

In his Opposition, Hicks contests defendants' claim that there are no material disputes of fact.  ECF 97 at 7-9.  Hicks claims, *id.* at 8: "Dr. Clem was responsible for supervising Plaintiff's medical care and had full access to his records, including his prescriptions. Dr. Clem failed to respond to Plaintiff's medical condition despite repeated attempts by Mr. Hicks to complain of his lack of access to prescriptions."  Furthermore, Hicks notes that Dr. Clem "had the ability to request the non-formulary prescription for Mr. Hicks' condition and failed to do so until days after it was necessary . . . ." *Id.*

At best, viewing the facts in the light most favorable to plaintiff, Hicks's claim amounts to one of medical malpractice.  Plaintiff has offered no evidence, direct or circumstantial, to suggest that Dr. Clem had actual knowledge of the fact that Stanford initially did not complete the prescription for Gabapentin.  *See* ECF 97.  Although plaintiff contends that Dr. Clem failed to ensure that Hicks received his medication, plaintiff offers no evidence to suggest that Dr. Hicks acted with deliberate indifference to plaintiff's medical condition or that Dr. Hicks was aware of any "widespread" conduct by Stanford that posed "an unreasonable risk of harm of constitutional injury." *See Shaw*, 13 F.3d at 799.

## IV.    Conclusion

The record shows that plaintiff's prescription for Gabapentin was belatedly renewed, resulting in a delay to plaintiff of a few days.  However, defendants have produced evidence indicating that Stanford had prescribed that particular medication for pain, and that Hicks timely received his anti-seizure medication.  Furthermore, defendants have produced undisputed evidence that Gabapentin is often prescribed for pain, and that the dosage here was, indeed, consistent with use for pain, not seizure control.  The evidence also reflects Dr. Clem's lack of knowledge as to what had occurred until such time as a request was submitted to him for his approval of the prescription.  At that time, Clem approved the request for Gabapentin.

Even assuming that Stanford was negligent in delaying for a few days the renewal of a pain medication, "mere negligence or malpractice does not violate the Eighth Amendment." *Miltier*, 896 F.2d at 852; *see Estelle*, 429 U.S. at 106.[13]  Accordingly, I shall GRANT defendants' Motion for Summary Judgment (ECF 95) and DENY plaintiff's Cross Motion for Summary Judgment (ECF 97).  And, I shall DENY defendants' Motion in Limine (ECF 100) as moot.  An Order consistent with this Memorandum follows.[14]

Date:_____12/23/16_____                    _____/s/_____
                                               Ellen L. Hollander
                                               United States District Judge

---

[13] This Memorandum should not be construed to suggest that the Court has expressed an opinion that the conduct of the health care providers amounted to negligence.

[14] Because these issues are dispositive of the Motion, I need not address defendants' arguments regarding causation.  ECF 95 at 13-17.